v. United States of America. Oral argument as follows. 10 minutes for each appellant, 20 minutes for the appellee. Supervisory attorney Melissa M. Salinas. Presents law student Cosmo Pappas arguing for Evan Alexander Johnson. Also arguing is Harold Gerowitz arguing for Ramiah Jefferson. Good morning, your honors. May it please the court. I'm not sure if I'm required to address you, but I did want to introduce myself as a supervising attorney and introduce Cosmo Pappas, who will present the argument. Thank you. Very well, thank you. Good morning. Good morning. May it please the court. Cosmo Pappas on behalf of Evan Alexander Johnson. This court should vacate Mr. Johnson's conviction for RICO conspiracy because the underlying Michigan predicates in his case sweep more broadly than generic robbery. In order to fairly subject individuals to federal liability and in order to provide notice of federal liability, there must be a principled limit on which state statutes can be charged as predicates in RICO cases. When Congress crafted the RICO statute to premise federal liability, nesting state statutes in its structure, those generic offense names provided a categorical limit. It indicated that liability should not obtain beyond those limits. Federal liability does not follow the vagaries of state legislative concerns. States like Michigan are, of course, free to expand the definitions of their criminal offenses, but the RICO statute cannot follow this limitless expansion. It would violate bedrock... That is correct, Your Honor, but our contention is that both at the grand jury, at the indictment, and at the trial stage, the issue is not that notice is provided of the statutes. Because, you know, the Michigan robbery statutes, they are listed there clearly, but Congress did not intend for liability to obtain when those statutes sweep beyond the generic definition. What is your best case in the RICO context to support that? I think Scheidler. So in 2003, the Supreme Court, in a civil RICO case, said that in black and white language, where the model penal code and the majority of states recognize extortion as requiring a taking, so too must the state offense charged. And so I see no reason, and the government's proffered no reason, why we can't plug robbery into that equation. Why we can't say that where the model penal code requires a completed taking, where the model penal code requires the victim's immediate presence, and where the model penal code requires actual force and something more than threatened use of force, where it requires all those things, so too must the state statute. You know, there's two things, this categorical approach that we use sometimes, like for ACCA. So there's maybe two things animating that. One is that, you know, you're going back to offenses that could be decades old, and you're trying to pull back, figure out what the facts were from the old records, and then figure out how that fits within the state statute. And that's quite difficult to do. That's not a problem here, because it's all current conduct. Second, there's a Sixth Amendment problem, arguably, in that context. But here, there's, I think, no Sixth Amendment problem, because you have your right to a jury with all those facts as presented. Yeah. So those seem like two pretty significant factors that were driving the categorical analysis somewhere else that don't seem present here. Well, to address both issues, Your Honor, I mean, I believe that in Taylor, you know, the court, the case that defined what generic robbery involved, and that was an ACCA case in 1990. Yeah, a sentencing case. It was a recidivist sentencing case, but I think very notably, Taylor rested its reasoning on Nardello, a travel act case, you know, which is part of the suite of racketeering statutes. So Nardello said that essentially in that case, the petitioners contested that Pennsylvania mail fraud counted as a bribery predicate. And the Supreme Court said, oh, it does, but that's because categorically, Pennsylvania mail fraud requires the same elements, requires the same sort of extortionate conduct as the generic extortion offense. And so, Taylor, if… Does it say the opposite? Does it say if it didn't, it wouldn't? It's one thing to say it has these elements so it can, but it's also different to say it doesn't so it can't. It doesn't have those elements so it can't qualify. It just says it's got the generic elements so it qualifies. But did it sort of say, had it not had those generic elements, it would not have qualified? I see no reason not to draw that negative inference from it. I think that in Shidler, which again, drew on Taylor and Nardello, a point I wanted to make is that if there's an important distinction in the Supreme Court jurisprudence on the categorical approach, if there's an important distinction between the present and prior conduct dichotomy, I think that's been lost on the Supreme Court. Shidler rested its reasoning on Taylor and Nardello, and Taylor rested its reasoning on Nardello. So basically, up and through Shidler, and continuing to today, up and through Shuler, the Supreme Court has recognized that there are similar animating principles. So an aspect I wanted to address is that not only are there the logistical and Sixth Amendment concerns here in the recidivist sentencing context, there's also uniformity concern. And so Taylor was quite clear that the reach of the ACCA statute, of the recidivist sentencing enhancement, it should not depend upon the state offense. It should not depend upon the label of the state offense. It should depend on the elements. That's the problem. I mean, you want to import the categorical approach from the Armed Criminal Act to the RICO Act, and I don't think the two are equivalent. I mean, the Armed Criminal Act talks about prior convictions, prior offenses. And I think that's why we look at the categorical approach as to those offenses. RICO, however, refers to the conduct that underlies the racketeering activity. It talks about not convictions, but conduct. And in the one context under armed career criminal, we don't look at the conduct. We just look at the generic definition. But RICO actually tells us to look at the conduct. There's got to be two acts of racketeering activity based upon conduct. So isn't there a distinction there between the two that really makes it illogical to import the categorical approach to RICO? Well, the problem, Judge Griffin, is that in a RICO case, despite the fact that that's presently charged conduct, and we agree that you are promising the prosecution on conduct alleged in the indictment. The problem is, nevertheless, that at the indictment stage and the trial stage, the jury is essentially being improperly instructed. The jury is being given the opportunity to find for conduct beyond what's listed in the statute. I mean, Congress was quite— But in this case, the jury instruction instructed on generic robbery. I would have to disagree, Judge Batchelder. I believe that the jury was instructed on the elements of Michigan robbery, such as the fact that Michigan robbery does not require a completed larceny. The jury instructions were quite clear that it imported or it cited in the course of committing a larceny language from the Michigan statute, the Michigan model jury instructions, which under People v. Williams, a 2012 case readily available to counsel at the time of trial, that said that a completed larceny was no longer required in a RICO prosecution. And so I just want to say, by way of closing, prior to rebuttal, that that means that the jury had the opportunity to find for conduct, including, I mean, say, an incompleted larceny. And we understand that RICO encompasses attempts and conspiracy, but it does not encompass an attempt to commit an attempt. And that is why the categorical approach is necessary, because the jury can find on a lesser and just different theory of conduct than permitted under the generic statute, under the generic statute. If we were to find in favor of you, would we not create a conflict with the Seventh Circuit's decision in the United States v. Brown? Your Honor, in Brown, that, I don't think that that opinion has very much force here, because it was essentially an unreasoned paragraph dealing with this. And I think that upon the full briefing of the issue. Not the holding in Brown? I mean, I'm always reluctant to create an inter-circuit split, because it creates havoc throughout the country. When you have, you know, one circuit court doing one thing and another circuit court doing another, that people don't know how to govern their conduct. And I know we don't have to follow other circuits' opinions, but I create conflicts reluctantly, and only if it's clear. And I guess your best argument is that it's kind of an unreasoned decision. Okay, first of all, do you concede it's the holding of Brown? I think it was one issue raised. I wouldn't. But it's a holding. Did I have one issue? Sure. I would concede that. We would create a conflict. Well, I think the more important conflict, I think that on the one hand, we have Brown in the Seventh Circuit. And I think on the other hand, we have the entire weight of a uniform rejection of the label-based approach that the government is urging this court to adopt. But not in this context. Excuse me? But not in this context. No court that I've found has said that in the RICO context, we should be applying the categorical approach. And if you've got a court that has said that, do tell me. Well, it's our position that the applicability of the categorical approach, or at the very least, if you don't want to use the categorical approach language as a matter of statutory construction, you can look at the statute and say every time the RICO statute is invoked, robbery has to mean the same thing. So it's our contention that if this court were to hold that the Michigan robbery predicates are valid, purely because of the label, because the government, there is some dispute, but at least I believe on one element, on the completed larceny aspect, the government doesn't even attempt to dispute that. Why does the statute say chargeable under state or federal law instead of that has been charged, or as to which there's been a conviction, or even be more specific than that? But it doesn't. The statute says chargeable. It does, but following the list of generic offense names, it's our position that Michigan robbery isn't robbery generically defined. It encompasses substantively different conduct than generic robbery. That can be true, but you can still lose. That can be true, but that doesn't matter for RICO purposes. I don't understand. Michigan robbery, if we were doing an act analysis, we would be looking very closely at that, but the state law doesn't have to be. I mean, that's just a high level. That's the whole, whether we have to look at which approach we have to take. If we don't think we have to take a categorical approach, then it doesn't matter, does it, that Michigan law might vary from other states. So long as you are convicted of that offense. You are charged and convicted with that offense in your RICO prosecution. To go back to one of Judge Batchelder's questions about whether or not the court has held this, and Judge Griffin's concern about creating the out-of-circuit or inter-circuit conflict, the Supreme Court has endorsed looking at the elements of the state statute, as has the Sixth Circuit in Adams. So in Adams and the Sixth Circuit, Shidler, Nardello, Taylor, and Shuler. Didn't they look at the specific elements of that actual offense? Didn't they look at the specific elements in Shidler of that defendant's actual offense? Which is not something you would do if you were doing a categorical approach. They looked at whether or not Illinois extortion required a taking. They did. They did look at the elements. No, they looked at the defendant's conduct and what its conduct amounted to, like specifically what the defendant did. They did, and that was following the analysis of whether or not that statute required a taking. So it was a dispositive point in the court's opinion, in its reasoning. The court found that Hobbs Act extortion requires a taking. It found that Illinois state extortion requires a taking. And by the way, that those statutes must have the same requirements. Both must require a taking in order to be a valid predicate. And had the court found that it wasn't a valid predicate, that would have been important to the holding as well. But it did then look at the conduct, as any case has to, because once you determine the categorical validity of the offense, then naturally, of course, there's fact-finding. So we don't dispute that. Our dispute is about the fact that in this case, both juries, the grand and pettit juries, were given the opportunity to indict and convict on conduct outside the remit. And so just looking purely, forgetting the categorical approach, looking at the statutory language, it demands some categorical analysis. The word involving demands that, and Congress's very clear instruction that the offenses are included by generic designation. That's plain. You're out of time on your principal argument. You can use your two minutes to rebuttal now, or you can save it. I'll save it. Thank you. Any further questions at this point, Judge Batchel or Judge Raidler? Thank you. All right, you'll have your two minutes rebuttal. Mr. Pappas. Good morning. Good morning, Your Honor. May it please the Court. Harold Gurwitz, appearing on behalf of Appellant Ramiah Jefferson. It is our position that both the language and the policy underlying the statute require a categorical approach here. And I would direct the Court's attention to the particular language of 1961-1A, which provides that any act or threat involving specified offenses by name, which is chargeable under state law and punishable by up to one year, requires that it be an offense which has certain elements that relate to state law, that are the elements required by state law. The second reason... So chargeable under state law means chargeable under what's generically understood as state law around the country. I'm sorry, I didn't hear the last part of your statement. Chargeable under state law doesn't mean the state that you're going to be charged under, which is one way to read it. We're going to charge you for violating Michigan robbery statute because it's an ongoing prosecution. You're saying it means chargeable under the generic law of the majority of states of the United States or something along those lines. No, Your Honor, it means that it is chargeable under the law of the state in which the violation is alleged. In this case, the indictment gave specific notice that the enhancement to allow the Court to sentence Mr. Jefferson up to life in prison for a RICO violation  was based upon two specific statutes, armed robbery in violation of MCL 750.529 and assault with a head to rub, 750.89. Those were alleged, I think, consistent with the requirements of the RICO statute that I just referred to. The Supreme Court has made clear, in addition, in Nardello and Taylor, both of which were relied upon in Shidler, that the policy of the Federal Racketeering Acts, which were enacted beginning with the Travel Act and then later the RICO statute, provided an opportunity for the federal government to assist local government law enforcement not to take it over and not to provide independent offenses, which is what essentially occurred here. The... Well, it could be, couldn't the RICO charge, couldn't all the predicate acts be state acts? Couldn't they be or shouldn't they be? Couldn't they be. According to the statute, they can be in violation. If your point is that, like, there has to be some federal, this is, they don't want, states don't have much of a role here, they envisioned a prosecution where all the predicate acts are state violations. That's right, that's right. According to Nardello, for example, they were asserting a right to prosecute serious crime which involved people crossing state lines from New York into Pennsylvania to commit a crime of extortion. And the defendant claimed that it was, in fact, some sort of a fraud scheme. And the question was whether or not the name fit in that circumstance. The federal statute was intended to apply to certain specific offenses. The government has gone beyond what was intended here in order to escalate the potential penalty which Mr. Jefferson faced. The court, the district court, used the robbery offense as a basis on which to enhance his sentence beyond 20 years to a maximum of life. I understand, we understand the implications. Yes, that's what happened. Those are the implications. Yes. Your argument is, like, why was it wrong for the district court to do that? That's right, that's right. We understand there's very significant implications by what the district court did. But why, again, is the district, your focus is why the district court was wrong to do that. It is wrong because it should have adopted a categorical approach and compared the elements of the generic offense of robbery to the state. Right. And your argument is because chargeable under state law means chargeable under state law is understood to be the generic understanding of that law in the United States. That's right. And clearly, I think that there is no dispute that the Michigan statutes are broader than the generic definition. I might be willing to agree with that also. It's just how you get to categorical from chargeable under state law. That's a tough. Well, Judge Batchelder asked earlier what the best case example is of a statement by a court which supports this argument, and it is certainly the statement in Scheidler, which, sorry, I don't have the quote exactly in front of me, but it provides that it must match, and that's what the court in Scheidler said. And Scheidler is also an example of a case where it was applied contemporaneously, not to a historic conviction such as in the armed career offender cases, such as Shurer, but rather to the determination of whether or not extortion under state law in Illinois matched the federal statute. And he said it didn't because it didn't include the additional element of taking a property. The categorical approach, I think, has to apply. The argument we've made is based upon Scheidler, relying upon Nardello and Taylor, that the categorical approach must apply in order to be consistent with the federal policy of not creating disparate results. Would you agree that, I think I know what you're looking for in Scheidler. They concede, however, that for a state offense to be an act, quote, act or threat involving extortion which is chargeable under state law, unquote, as RICO requires, the conduct must be capable of being generically classified as extortionate. So you're saying there's no distinction, no difference between the conduct and the offense. The statute, Your Honor, says it means any act or threat involving, and the word involving is followed by the list of enumerated, as the court in Keenan, the Fourth Circuit said, federal offenses. They're not. They're a list of named statutes such as murder and, in this case, robbery. But I'm asking you because you were relying on Scheidler. Yes. Scheidler is the case that says, as RICO requires, the conduct must be capable of being generically classified as extortionate. And it seems to me that there might likely be a difference between the offense and the conduct. Conduct could be a whole lot less than the breadth of the offense. And you're saying if the offense is broader than the generic, then it can't possibly qualify as a RICO predicate. But if the conduct, as Scheidler says, must be capable of meeting the generic definition, that seems to me to be somewhat different. It is. Conduct is clearly the focus in the armed career offender cases such as your, where the statute at issue follows the word involving with examples of conduct in drug cases, such as by, let's see, my time is up, and I did reserve two minutes. I didn't say that at the beginning of my argument. Go ahead. Thank you very much. Sure. The statute at issue followed the word involving by references to conduct, such as manufacturing, distributing, or possessing. In the RICO statute, involved is followed in the series of lists of various offenses by specific reference to it must be one that is chargeable. Chargeable can only mean, it must mean that it must meet the elements of the state offense in order to be chargeable. And therefore, it's necessary to apply the comparison between the elements of the state offense and the federal offense and determine whether or not it meets the requirements. That is consistent with the policy articulated, particularly in Taylor, which says it is implausible that Congress would have created statutes which result in different outcomes based upon the same circumstances in Michigan versus California. Okay. Any further questions at this time? No. All right. You'll have your two minutes rebuttal. Thank you very much. The United States. May it please the Court? Good morning. Andrew Goetz for the United States. The categorical approach does not apply here, and the defendants have provided no reason why it does. The statutory language here does not require the categorical approach. None of the other reasons for the categorical approach apply here either, as Judge Radler, you suggested in your question. And the defendants have never contested that the bounty hunter's actual conduct here fit within the definition of racketeering activity in 18 U.S.C. section 1961.1. That definition does not require the categorical approach, and the district court's judgments below should be affirmed on that basis. Now, Judge Batchelder, I want to pick up with your question about Shidler, because Shidler supports our reading of the statute, not the defendant's reading. The defendants pluck out one sentence from Shidler, but that disregards the analysis both before and after that sentence. In the paragraph immediately following that sentence, as Judge Radler, you suggested, the Supreme Court compared the conduct in that case to the generic version of extortion, and held in that case the petitioner's conduct was not extortionate. Never once did the Supreme Court compare the state statute with generic extortion. In fact, if the court looks earlier in the opinion, the Supreme Court referred to the RICO predicates as violating various state law extortion statutes, plural. So there were multiple statutes at issue there. If the categorical approach had applied there in the way the defendants are claiming now, we would have seen the Supreme Court compare element by element, generic extortion with each of those statutes. The Supreme Court did not do that. Instead, the court looked at conduct. Nordello, the other case they've hung most of their argument on, also supports our argument. That was the Travel Act case, where the Supreme Court said that under the Travel Act, extortion means generic extortion, and conduct that violates state law. So the court had two components to its definition of the Travel Act. Is the conduct extortionate? And does it also violate state law regardless of how the state has defined it, regardless of how the state has labeled it? Absent from Nordello is any suggestion that they're comparing the specific elements of the statute with generic extortion. That appears nowhere in Nordello. And in fact, the Supreme Court's, I don't want to say motivating purpose, but one of its motivating purposes for reaching that interpretation was because they did not want to have the Travel Act vary in its meaning based on where the conduct occurred, based on which state the conduct occurred. So the Supreme Court interpreted the statute in that way. Our interpretation maintains that uniformity. The defense interpretation, on the other hand, would read robbery out of existence as a racketeering act in half of the United States. So we would make Swiss cheese out of this definition in 1961-1A. Nothing in the statutory language or the Supreme Court's cases support that interpretation. Moving back to the statutory language here, because I think there was some questioning on that point, the language here all refers to conduct. Racketeering activity, that's a term that refers to conduct. Activity, the very nature of the term. Any act or threat involving robbery. Act or threat is conduct. It's not a reference to a state statute. And Judge Raylor, to your point, the end of that, chargeable under state law and punishable by imprisonment for more than one year, that modifies any act or threat involving robbery. That asks whether the conduct is chargeable as a felony under state law. That's actually a defendant-friendly limitation, but not in the way they're claiming. Because it modifies any act or threat involving robbery. It means that if somebody just thinks about robbery, that doesn't count as a racketeering activity because it's not chargeable as a felony under state law. So it does protect defendants, just not in the way they're claiming here. Judge Batchelder, I want to answer your question about the jury instructions. And I want to start with a procedural point. The defendants have never actually claimed that the jury instructions were erroneous here. That's different than what they're claiming now. They're claiming that robbery should not count at all as a racketeering predicate here. They've never actually challenged the jury instructions. They didn't challenge them at trial. They were jointly stipulated. They didn't challenge them on appeal before. They didn't challenge them below here. And they haven't challenged them in their briefing. That means they forfeited that argument or waived that argument when it comes to the joint stipulation approximately four times over. So it's not properly before the court, and even if it was, they would have to show that the instructions here prejudice them in some way. That's what a jury instruction claim is. When you claim the jury instructions are erroneous, you have to show prejudice. They actually concede the point away. They never argue that the bounty hunter's conduct was beyond generic extortion. And they couldn't do that because at trial, the evidence showed that the robberies were actually pretty generic. They were people pointing a gun in someone's face and taking their things. That's a generic robbery. There were no non-generic robberies at trial. So the difference between Michigan law and generic robbery, even under their reading of it, didn't matter to this case. Now I'm happy to answer any further questions. I have none. Do you have questions, Judge Batchelor? Remind me procedurally in terms of where we are here. One of these defendants is before us on direct appeal, but the other is before us on a 2255. That's correct. And with regard to the 2255, really the issue of categorical or not comes in the context of an ineffective assistance of counsel claim. Is that right? That's correct, Judge Batchelor. And that's actually a simpler way to resolve Defendant Evan Johnson's appeal, is that whatever the court would decide now, it couldn't have been ineffective not to raise that eight years ago. No court of appeals has adopted their reading. In 2015, this issue wasn't on anybody's radar. But with Mr. Jefferson's appeal, it is squarely before us whether, in fact, the categorical approach should have been used. I'll say yes with a caveat. The yes is that this is on a direct appeal from a remand for resentencing, so only sentencing issues are properly before the court based on the prior remand. But it does affect sentencing in that it enhances the statutory maximum and the same definition of racketeering activity applies to the guidelines. So yes in part, but no, he can't challenge his conviction in this context using his argument. But it still does bring up the categorical versus not categorical approach. Yes, that issue is squarely presented, and it seems like not just the simplest way to resolve this appeal, but the correct way to resolve this appeal. Thank you. Can I ask one question? Sure. I probably should have asked the other side, but they ran out of time, and they got a lot of questions. I'm just trying to understand the nuts and bolts of how this works in their mind. The offense for purposes of predicate acts, for purposes of RICO liability, are they saying that is the specific state, but then when you get to sentencing, you look to whether that specific state conviction would qualify as a generic conviction, and if it doesn't, then you can't use it for sentencing purposes? Or are they saying somehow it's generic in both instances? I realize it's their position. I just didn't ask. I don't think they're drawing a distinction in that way. I think they're saying the categorical approach applies to the definition here regardless of the context. That's quite hard. Then we have to, as a threshold, figure out just for purposes, or the district court just for the purposes of the trial, the jury instructions, what the generic offense is. If it's a specific state offense, you have the elements under that state. If for purposes of charging and convicting, then the jury instruction would have to follow a generic. Generic burglary is this, and the district court has to determine what generic burglary is. Do you think that's their position? Once that's found, then I guess it qualifies as generic, so then the sentencing becomes easier. I don't think that's their position. I think that's our position. Their position is if generic burglary is narrower than the state statute, you can't instruct on burglary at all. End of story. It doesn't count. I think our position is, as you can see in some of those Second Circuit cases we've cited, that the instructions can proceed on a few ways. One, if the generic offense and the state offense are identical or identical in ways that matter for the case, you can instruct on either, because a jury finding on one is necessarily going to be a finding on the other. If the state differs? Let's say the state is broader than generic. I think then you'd probably want to instruct on generic, because then if the jury finds generic, they didn't necessarily find the broader one. I think you can imagine cases where you'd have to determine generic or the state instruction and modify it in some way. Is this just about suspenders? Suppose you instruct on Michigan only. Michigan is broader. You only instruct under Michigan. Then for sentencing purposes, you're saying that that's, aren't you still going to argue it qualifies? We're arguing it qualifies here, in part because the difference between Michigan, which was the instruction, and generic is immaterial to the case. I think you're right in maybe thinking that if we were constructing the jury instructions now, we might do it a little bit differently and focus on generic robbery just to avoid this dispute. But that difference, one, they haven't challenged the instructions, and two, that difference just doesn't matter given the facts of the case. But I do think the Second Circuit has some support. Some of those Second Circuit decisions have some support for instructing on the generic offense, especially when it's narrower than the state statute. All right. Any further questions? No, thank you. Thank you, Mr. Goetz. Thank you. Two minutes rebuttal, Mr. Pappas. Thank you. May it please the Court. Robbery must mean something. When the RICO statute is invoked to subject defendants to a 20-year sentence or, in the alternative, above that, given an enhancement, as happened in this case, the jury can't be instructed on an offense that's substantively different. And the government makes much of the supposed uniformity concerns in our approach, but it seems that the government has all but conceded that the jury should not be instructed on the broader offense, and yet that's exactly what happened here. And so the uniformity concern goes, I think, very much in the other direction. As the Supreme Court noted in Taylor, we don't want to differentially expose defendants to different sentences, to different kinds of liability under a federal regime, depending on the state that they're in, depending on how their state happens to define that offense. And yet, Michigan's robbery offense encompasses de minimis conduct up to and including purse snatching. And not only does it include de minimis conduct, but it includes just different conduct. Because, again, the force is only one independent basis for this Court to find that the jury was instructed on improper elements, which is a problem. We can debate all day about the categorical approach and exactly how the courts talk about the categorical approach vis-a-vis RICO, but when it comes down to it, we look at what happened in the case. And so here, the jury was instructed on a broader offense, and so we can't know that they only relied on the conduct, on the sort of conduct that Congress intended for people to be held liable under the RICO statute. And this comports with both the Supreme Court's and the Sixth Circuit's analysis in the categorical context. For instance, in Adams, where it found that Kentucky vote-buying satisfied bribery, and it did so in looking to whether or not it looked at the model penal code. The government has a, if I may conclude, the government essentially has a we-know-it-when-we-see-it approach to RICO. There's no sufficient notice to say the allegations make out robbery. The government's not in a position to say that, nor are we, nor, frankly, is the Court. The jury was in the position to make that judgment. How do you respond to Judge Batchelder's point that this is an ineffective assistance to counsel claim that you brought under 2255? And this is an interesting intellectual argument whether categorical approach ought to be applied or not, but a reasonable attorney would not have known that this was the law. How do you respond to that? Well, if this argument was because of Scheidler and because of the Michigan amended robbery statute, that happened in 2003 and 2004. The Michigan Supreme Court decided Williams and Smith-Anthony in 2012 and 2013. And so at the time of trial, there was no strategic reason not to raise this argument. There's not very much deference due. A reasonable attorney would know that this argument had to be raised or should have been raised? The Constitution incentivizes attorneys to raise these arguments, and so it should be expected of a federal... Does that make him ineffective because he didn't do the best practice? I mean, that's not quite the standard, is it, for ineffective assistance? We're not saying that it's the best practice. We're saying that a cursory review of the recent Supreme Court RICO precedent... Would have known or should have known. Should have known. So, yeah, with that, we would ask that the Court admit Mr. Johnson's conviction is defective because there are no specific findings to indicate that the jury relied only on generic robbery. Thank you. Anything further at this point? Not from me. Thank you, Mr. Pappas. Thank you. To be clear about the status of Mr. Jefferson's case, he's appealing from resentencing on remand. We were here the first time the Court affirmed convictions including a 924C, which was vacated as a result of the Supreme Court decision in Davis. So we went back for a plenary resentencing, and at that time we objected to the use of the state robbery charge, which notice was given to the jury, and the finding was made as required by Apprendi, beyond a reasonable doubt, because it enhanced his penalty. So there were two considerations. One was enhancement. The robbery was the only basis on which his sentence was enhanced. It could have been enhanced to a larger amount. The second was because there were racketeering acts of robbery which were itemized, which were listed in Mr. Jefferson's pre-sentence report upon which his guidelines were calculated. Based upon the clear language, I would submit, of 1961 1A, which refers to offenses by name and says they must be chargeable under state law, which requires a penalty of one year or more. This Court should use a categorical approach. The policy, which was articulated by the Supreme Court in Taylor, which says, absent plain indication to the contrary, federal laws are not to be construed so that their application is dependent upon state laws because application of federal legislation is nationwide, and at times the federal program would be impaired if state law were to control. And that is the principle that I think continues from 1990 when Taylor was decided until the present time, and it's a reason why, as the Supreme Court said in its concurring opinion in Shidler, that there has to be some break on the expansion of the RICO statute, in this case by federal prosecutors to seek enhanced sentences. All right. Thank you. Anything further? Nope. All right. I note that Mr. Pappas and Mr. Gurwitz, you've been appointed pursuant to the Criminal Justice Act, and I'd like to thank both of you for an excellent job of representing your clients and an excellent presentation this morning, including you, Mr. Pappas. I thought you did excellent. You represented your client very well. So thank you for your service to the court, and good briefs help us measurably and make our decisions a lot better when we have good briefing by both sides. Thank you very much. Thank you for your service to the court. I believe that concludes our oral argument docket this morning. With that, you might adjourn the court. This court stands adjourned.